UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DENTAL HEALTH SERVICES INC, et al.,

Plaintiff(s),

v.

TOBY MILLER, et al.,

Defendant(s).

CASE NO. C23-0383-KKE

ORDER DENYING DEFENDANT'S MOTION FOR ATTORNEY'S FEES

After the Court dismissed with prejudice the claims brought by Plaintiff Dental Health Services ("DHS") against Defendant Toby Miller (Dkt. No. 76), Miller filed a motion asking the Court to order DHS to reimburse the attorney's fees she, as the prevailing party, incurred in defending herself against DHS's meritless claims. Dkt. No. 77.[1] Although the Court agrees with Miller that DHS's claims were objectively specious, because Miller has not shown that DHS brought or maintained the claims against her in bad faith, the Court finds that Miller is not entitled to a fee award.

## I. BACKGROUND

DHS filed suit against Miller and Josh Nace in King County Superior Court in March 2023, and Miller and Nace timely removed. Dkt. Nos. 1, 1-2. DHS's complaint alleges that Miller and

[1] This order refers to the parties' briefing by CM/ECF page number.

Nace misappropriated DHS's trade secrets and wrongfully disclosed proprietary information after their DHS employment ended, in violation of both the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, and the Washington Uniform Trade Secrets Act ("WTSA"), section 19.108 of the Revised Code of Washington. Dkt. No. 1-2 ¶¶ 51–56. As to Miller, DHS alleged she had misappropriated two categories of information: (1) information appended to 10 emails Miller sent to herself from her work account to her personal account, shortly before her DHS employment ended in September 2022; and (2) information contained on a DHS-issued laptop that Miller failed to return at the conclusion of her employment, despite DHS requesting its return on multiple occasions. *See, e.g.*, *id.* ¶¶ 31–36, 71–72.

The day after the suit was removed to this Court, DHS sought a temporary restraining order ("TRO") against Miller and Nace and moved for expedited discovery. Dkt. Nos. 2, 4. In opposition to the motion for TRO, Miller filed a detailed declaration explaining she had sent herself the emails in order to assist DHS personnel in closing out matters after her departure. Dkt. No. 20 ¶ 19. She further stated that she did in fact provide such assistance on at least 24 occasions in response to requests for help from DHS employees and was not compensated for her time in doing so. *Id.* ¶ 20. Miller's declaration also explained that she had unintentionally failed to return the laptop when she separated from DHS because she did not use it, and that while she could not initially locate it, once she found it, she promptly provided it to her counsel. *Id.* ¶ 28. Finally, she testified that she was not in communication with Nace or anyone else regarding any DHS business, was not competing with DHS, was not working with Nace, was no longer working in sales, and had not shared or used any DHS information. *Id.* ¶ 23.

After Miller filed her opposition, DHS withdrew its request for injunctive relief as to Miller, but maintained it as to Nace. Dkt. No. 24 at 1 ("After finally receiving answers and assurances from Defendant Toby Miller's filings and sworn statements, and after discussion with

Ms. Miller's counsel, DHS withdraws its request for injunctive relief as to Ms. Miller[.]"). The Court ultimately denied DHS's motions for TRO against Nace and for expedited discovery. Dkt. No. 37. In finding DHS had not established a likelihood that it would prevail on its trade secret claims against Nace, the Court noted that DHS failed to identify any legally protectable trade secret that Nace had allegedly misappropriated. Dkt. No. 37 at 9–12.

On April 11, 2023, Miller's counsel sent a letter to DHS asking it to dismiss its complaint against her, asserting there was no basis for the claims and that they were wrongfully brought. Dkt. No. 51-1 at 2–6. DHS did not respond. Dkt. No. 51 ¶ 2. On April 12, 2023, Miller's counsel delivered the laptop to DHS's counsel. Dkt. No. 65 at 42. According to internal workplace messages, DHS employees reviewed information on March 3, 2023, showing that Miller had last logged in to the laptop on February 1, 2022, roughly seven months *before* her DHS employment ended. Dkt. No. 78 ¶ 3, *id.* at 8. A DHS-hired expert later conducted a forensic review of the laptop in June 2023, which indicated that Miller had not accessed or modified a document, sent an email, or conducted an internet search on the laptop since February 3, 2022.[2] *Id.* ¶ 5; Dkt. No. 87 ¶ 3.

On April 19, 2023, Miller served discovery requests, asking DHS to identify the trade secrets and/or confidential information that Miller had allegedly misappropriated. Dkt. No. 51 ¶ 4. Although DHS served its interrogatory responses in May 2023, it did not identify any trade secrets with specificity, but rather echoed the general allegations stated in the complaint. *Id.* ¶ 5; Dkt. No. 51-1 at 8–29. In mid-June 2023, Defendants noticed the depositions of Theresa Neibert, DHS's vice president and chief enterprise risk management officer, and Gary Pernell, DHS's president and CEO. Dkt. No. 51 ¶ 20. The depositions were initially set for late July, however, DHS

[2] Notably, DHS did not produce this information to Miller until December 18, 2023. Dkt. No. 78 ¶ 5.

repeatedly insisted on rescheduling them, and was slow to respond to follow-up inquiries by Defendants' counsel.[3] *Id.* ¶¶ 20–30.

DHS served discovery requests on Miller in June 2023, and received the majority of Miller's discovery by September 29, 2023. Dkt. No. 51 ¶¶ 15–16. On November 13, 2023, DHS filed a motion to continue the trial and related dates. Dkt. No. 45. In opposition to the motion, Miller's counsel submitted a declaration detailing DHS's dilatory conduct during the discovery phase of the case. Dkt. No. 51. Despite repeated promises, DHS had still not updated its interrogatory responses to identify with any specificity the trade secrets allegedly at issue. *Id.* ¶ 5. DHS had produced only a handful of documents. *Id.* As of November 20, 2023, DHS had not noticed or otherwise sought to take any depositions in the case. *Id.* ¶ 19.

At the hearing on DHS's motion to continue the trial date, the Court observed that "a lot of the delay has been occasioned by the plaintiffs in this matter." Dkt. No. 63 at 3. The Court ultimately granted DHS's motion in part, allowing a short extension of the trial date and related deadlines. Dkt. No. 57.

On January 23, 2024, after DHS retained new counsel, DHS asked whether Miller would stipulate to dismissal without prejudice of DHS's claims against her. Dkt. Nos. 59–60, Dkt. No. 65 ¶ 6. Miller would only agree to dismissal *with* prejudice. Dkt. No. 64 at 9. On January 25, 2024, DHS filed a motion to dismiss Miller *without* prejudice. Dkt. No. 61. After hearing oral argument, the Court issued an order dismissing Miller *with* prejudice. Dkt. No. 76. The Court determined that if DHS's claims against Miller were dismissed without prejudice, Miller would suffer legal prejudice by losing her ability to seek attorney's fees as the prevailing party. *Id.* at 5.

[3] The delay was due, in part, to one witness's poor health. *See* Dkt. No. 51 ¶¶ 23, 26–32; Dkt. No. 51-1 at 33, 35. However, DHS was slow to provide updates on the witness's availability. *Id.*

Miller now brings a motion for attorney's fees. Dkt. No. 77. Miller argues she is entitled to fees incurred since April 12, 2023, when she returned the laptop, and that DHS's "knowing pursuit" of a meritless trade secret claim suggests bad faith. *Id.* at 11. The Court heard oral argument on the motion on June 6, 2024 (Dkt. No. 94), and this motion is ripe for resolution.

## II. ANALYSIS

Miller requests reimbursement of the attorney's fees she incurred defending against DHS's meritless trade secret misappropriation claims.[4] Dkt. No. 77.

DHS sued Miller under the federal DTSA and Washington's UTSA. Both the DTSA and the UTSA contain discretionary fee-shifting provisions, which authorize an award of attorney's fees to the prevailing party[5] if a claim of trade secret misappropriation is made in "bad faith." *See* 18 U.S.C. § 1836(b)(3)(D) ("In a civil action brought under this subsection with respect to the misappropriation of a trade secret, a court may … if a claim of the misappropriation is made in bad faith … award reasonable attorney's fees to the prevailing party."); WASH. REV. CODE § 19.108.040 ("If a claim of misappropriation is made in bad faith … the court may award reasonable attorney's fees to the prevailing party.").

Although neither the DTSA nor the UTSA define "bad faith," "'courts generally adopt a two-pronged standard for the evaluation of such claims.' The party seeking an award of attorney's fees must show (1) the objective speciousness of claim, and (2) the subjective bad faith in bringing or maintaining the claim." *Swarmify, Inc. v. Cloudflare, Inc.*, No. C 17006957 WHA, 2018 WL

[4] Although DHS also brought non-trade secret claims against Miller, she contends that the claims are interrelated such that she is entitled to recover all of the fees incurred without apportionment. Dkt. No. 77 at 14. DHS does not dispute the issue of apportionment. Dkt. No. 84. This order thus considers Miller's entitlement to fees generally, rather than with respect to certain claims. *See, e.g.*, *Shame on You Prods., Inc. v. Banks*, 893 F.3d 661, 669–70 (9th Cir. 2018) (when multiple claims "involve a common core of facts and are based on related legal theories," it is appropriate to hold the claims are interrelated, and to decline to apportion fees).

[5] In the Ninth Circuit, "a defendant is a prevailing party following dismissal of a claim if the plaintiff is judicially precluded from refiling the claim against the defendant in federal court." *Cadkin v. Loose*, 569 F.3d 1142, 1150 (9th Cir. 2009). It is undisputed that Miller is the prevailing party here. *See* Dkt. No. 77 at 10, Dkt. No. 84 at 5.

4680177, at *2 (N.D. Cal. Sep. 28, 2018) (quoting *Farmers Edge Inc. v. Farmobile, LLC*, No. 8:16CV191, 2018 WL 3747833, at *6 (D. Neb. Aug. 7, 2018)).  Under Washington law, an award of attorney's fees for "bad faith" can be based on prelitigation misconduct, procedural bad faith, or substantive bad faith.  *RJB Wholesale, Inc. v. Castleberry*, 788 F. App'x 565, 566 (9th Cir. 2019).  "Prelitigation misconduct is 'obdurate or obstinate conduct that necessitates legal action to enforce a clearly valid claim or right,' procedural bad faith is 'vexatious conduct during the course of litigation,' and [substantive] bad faith 'occurs when a party intentionally brings a frivolous claim, counterclaim, or defense with improper motive.'"  *Id.* (quoting *Rogerson Hiller Corp. v. Port of Port Angeles*, 982 P.2d 131, 136 (Wash. Ct. App. 1999)).

Thus, the Court will first determine whether DHS's claims against Miller were objectively specious, and then turn to consider whether they were brought or maintained in bad faith, to determine whether Miller is entitled to reimbursement of her attorney's fees under either the DTSA or the UTSA.

**A.      DHS's Trade Secret Claim Against Miller was Objectively Specious From June 2023 Forward.**

The parties dispute whether DHS's trade secret claim was objectively specious.  "Objective speciousness exists where the action superficially appears to have merit but there is a complete lack of evidence to support the claim."  *Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst., Inc.*, 664 F. Supp. 3d 1142, 1159 (S.D. Cal. 2023) (cleaned up).  "To succeed on a claim for misappropriation of trade secrets under the DTSA, a plaintiff must prove: (1) that the plaintiff possessed a trade secret[;] (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff."  *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020).  "To prove ownership of a trade secret,

plaintiffs 'must identify the trade secrets and carry the burden of showing they exist.'" *Id.* at 658 (quoting *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993)).

Miller argues that because DHS failed to identify with sufficient particularity the trade secret that she allegedly misappropriated, and failed to uncover any evidence suggesting that she had wrongfully used or disclosed a trade secret (or threatened or planned to do so), DHS's claim was entirely meritless from its inception. Dkt. No. 77 at 11–12. At oral argument, Miller argued that if the Court does not agree that DHS knew or should have known that its claims were objectively specious by virtue of Miller's return of the laptop in April 2023, at the very least, DHS knew or should have known its claims were meritless by the time it received the June 2023 forensic report confirming that Miller had not accessed the laptop for more than a year.

DHS acknowledges that eventually it discovered that Miller could not have misappropriated any trade secrets on her work laptop, and that Miller eventually destroyed the confidential information she had emailed to herself on her last day of work, but it argues that those results were achieved via litigation, and thus the claim was not meritless from its inception. Dkt. No. 84 at 8–9.

The Court agrees with DHS that the trade secrets claim was not meritless from its inception, but finds that it was nonetheless objectively specious as of June 2023, by which time DHS confirmed that Miller had not disclosed any information contained on her DHS laptop and had received Miller's verifiable explanation for why she sent the emails to herself. Litigation to that point had gutted the evidentiary basis for DHS's trade secrets claim, yet DHS continued to litigate against Miller from June 2023 until it finally agreed to dismiss its claims against Miller in January 2024. Because the trade secrets claim lacked any factual foundation as of June 2023 at the latest, DHS maintained an objectively specious claim against Miller from June 2023 forward.

**B.      The Court Finds No Direct or Indirect Evidence that DHS Acted in Bad Faith.**

According to Miller, the Court should find direct and indirect evidence of DHS's bad faith in maintaining trade secret claims against her. Dkt. No. 91 at 6–8.  Miller argues that because DHS "knew the lawsuit and false allegations were causing harm to [her] professionally and personally[,]" the Court should find that DHS maintained its claims against her for an improper purpose.  *Id.* at 7; Dkt. No. 77 at 13.  Miller requests that the Court infer DHS's subjective bad faith because DHS maintained an objectively specious claim for months after it realized it was meritless.  Dkt. No. 77 at 12–13.  Miller also argues that DHS's pressing on with litigation, with the knowledge that its claim was unfounded, constitutes procedural bad faith, particularly because DHS stalled on scheduling depositions, failed to disclose the forensic report on the laptop until months after receipt, and eventually dismissed Miller without explanation.  *Id.* at 13, Dkt. No. 91 at 7 n.2.

Although, as explained in the previous section, the Court finds that the evidentiary support for DHS's trade secrets claim against Miller had essentially evaporated by June 2023 at the latest, the Court cannot find that DHS's litigation conduct since that time evinces procedural bad faith.  As explained in granting DHS's motion for a trial continuance in December 2023, the Court found good cause to grant a short continuance, even though the Court emphasized that "a lot of the delay has been occasioned by [DHS] in this matter."  Dkt. No. 63 at 3.  And although Miller opposed the continuance in part on the ground that DHS had side-stepped its discovery obligations and delayed scheduling depositions (Dkt. No. 50 at 7–9), she did not file a discovery motion or otherwise raise this issue for court resolution, which also undermines Miller's suggestion now that DHS's conduct was vexatious during this period.  Although DHS's conduct was not a model of diligence, the Court does not find that its litigation strategy was dilatory or disruptive to the point that it must be sanctioned in order to protect the "integrity of the court" and its ability to "manage

[its] own affairs to achieve the orderly and expeditious disposition of cases." *Rogerson Hiller*, 982 P.2d at 136 (quoting *State v. S.H.*, 977 P.2d 621, 625 (Wash. Ct. App. 1999), *as amended at* 8 P.3d 1058, 1061 (Wash. Ct. App. 2000)). The Court thus does not find that DHS's dilatory conduct rises to the level of procedural bad faith.

Neither does the Court find evidence that DHS maintained its claim against Miller for an improper purpose that would support a finding of substantive bad faith. Miller submitted a declaration in response to DHS's motion for TRO that was later withdrawn, indicating that:

> I am quite concerned about the impact that the existence of the lawsuit and its claims may have upon me and my career. Reputation is very important in what I do, and is personally important to me. (I try, for example, to model for my daughter the values of integrity and honesty.) The allegations that are made in DHS's complaint and in the TRO Motion smear me with accusations that are not only false, but are hurtful, offensive and which may well follow me wherever I go in this business.

Dkt. No. 20 ¶ 29. There is no doubt that litigation is stressful, expensive, and potentially harmful to reputation, but as the Court has explained, DHS's claim against Miller was not specious from the outset, and DHS did not abuse the litigation process to secure the return of the laptop and the destruction of the information Miller emailed herself. Although DHS did not dismiss its meritless claim against Miller as quickly as it should have after it had accomplished those goals, neither Miller's declaration nor any other evidence in the record suggests that DHS did so for an improper purpose.

And although Miller urges the Court to infer DHS's bad faith from the fact that it maintained a specious claim against her for months after it should have realized it was meritless, the legal authority she cites in support of that request is distinguishable. *See* Dkt. No. 77 at 13–14. For example, Miller cites *Cherokee Chemical Company, Inc. v. Frazier* for the proposition that subjective bad faith can be inferred from circumstantial evidence. No. CV 20-1757-MWF (ASx), 2022 WL 2036305, at *5 (C.D. Cal. Apr. 27, 2022). In that case, the plaintiff filed suit

"only after one of its clients ended their relationship and decided to purchase from [a competitor] instead[,]" and after the defendant had sued the plaintiff twice. *Id.* The court also noted that the plaintiff had been sanctioned by the court for discovery abuse, and inferred from these circumstances that plaintiff had brought the suit "with the intent to suppress a competitor or to retaliate against a former employee, or both." *Id.* These circumstances are not paralleled in this case. Here, the Court finds no impropriety in DHS's initiation of the suit, and there is no suggestion from the record that DHS's discovery delays were independently sanctionable. Thus, the circumstances giving rise to an inference of bad faith in *Cherokee* are not found here.

Likewise, in *Teetex LLC v. Zeetex, LLC*, another case cited by Miller (Dkt. No. 77 at 14), the court inferred subjective bad faith where (1) the plaintiff filed a lawsuit based on theories that had already been rejected in a related case; and (2) the plaintiff "evaded its discovery obligations, provided inaccurate discovery responses, and failed to diligently pursue discovery to support its claims[,]" as evidenced by the court's denial of the plaintiff's motion to extend the discovery deadline. No. 20-cv-07092-JSW, 2022 WL 2439176, at *3, 5 (N.D. Cal. Jul. 5, 2022). The *Teetex* court relied on its prior orders finding that the plaintiff's claims were specious from their inception and that plaintiff had failed to diligently comply with its discovery obligations, but the Court has not entered similar orders in this case. *Id.* Instead, the Court has found that DHS's claims against Miller were not initially meritless and found good cause to support a modest extension of the discovery deadline.

Miller also cites *Stilwell Development, Inc. v. Chen*, No. CV86-4487-GHK, 1989 WL 418783, at *4–5 (C.D. Cal. Apr. 25, 1989), where a court considered a prevailing defendant's entitlement to fees under a California trade secrets act. Dkt. No. 77 at 14. The court inferred the "subjective misconduct" required for a fee award under California law from the fact that the plaintiffs "could not have entertained any good faith, albeit mistaken, belief in bringing, much less

maintaining, the trade secret claim" against the defendant, and yet "persisted in the claim through their case in chief[,]" which caused the defendant's "needless expenditure of money in defense of the trade secret claim." 1989 WL 418783, at *4–5. In *Stilwell*, the plaintiffs prosecuted a meritless claim through the first half of trial, before the court granted the defendant's motion for a directed verdict. *Id.* at *1. Even setting aside any question as to the equivalence of "subjective misconduct" to "subjective bad faith," the Court finds *Stilwell* distinguishable from the circumstances of this case. DHS's initiation of its claim was not inappropriate from its inception and Miller does not argue otherwise. While DHS pursued the claim for a number of months longer than it should have, it ultimately dismissed Miller before the continued discovery deadline expired. *See* Dkt. No. 57. Although Miller incurred costs that could be characterized as needless after June 2023, the Court is not aware of facts suggesting that DHS's delay resulted from a motive to harass or retaliate or any other improper motive that would suggest bad faith.

Lastly, Miller cites *Computer Economics, Inc. v. Gartner Group, Inc.,* No. 98-CV-0312 TW (CGA), 1999 WL 33178020, at *1 (S.D. Cal. Dec. 14, 1999), where a defendant requested fees under California's trade secrets act. Dkt. No. 77 at 14. The *Computer Economics* court found "strong circumstantial evidence" of the requisite "subjective misconduct" where the plaintiff's refusal to provide a specific identification of its trade secrets led to a discovery dispute requiring court intervention, where plaintiff's Rule 30(b)(6) witness provided "evasive answers to direct questions" when the defendant repeatedly asked about the factual basis for the trade secret claim, and where the plaintiff's opposition to the defendant's motion for summary judgment revealed that the plaintiff was aware of the deficiencies in its claim and instead devoted six pages of the brief to attacking the credibility of a representative of the defendant. 1999 WL 33178020, at *5–7. While some of the facts in *Computer Economics* align with the facts here, the differences are more compelling. Specifically, in this case, DHS agreed to dismiss its claims against Miller far sooner

in the litigation process than the *Computer Economics* plaintiff, and DHS's discovery delays were not so egregious as to spur Miller to file a discovery motion; rather, the Court found good cause for a modest extension of the discovery deadline.

Although the Court is sympathetic to Miller's position, and is troubled that DHS has not offered a fully satisfying explanation as to why it maintained a specious claim against Miller after June 2023, the Court nonetheless finds no evidence directly or indirectly suggesting that DHS acted in bad faith. In the absence of such evidence, the Court finds that Miller is not entitled to attorney's fees under either the DTSA or UTSA. *See, e.g.*, *Barrett Bus. Servs., Inc. v. Colmenero*, No. 1:22-CV-3122-TOR, 2024 WL 1508840, at *3–4 (E.D. Wash. Mar. 20, 2024) ("[S]imply bringing a frivolous claim is not enough, there must be evidence of an intentionally frivolous claim brought for the purpose of harassment." (quoting *Dave Johnson Ins., Inc. v. Wright*, 275 P.3d 339, 354 (Wash. Ct. App. 2012))).

## III. CONCLUSION

For these reasons, the Court DENIES Miller's motion for attorney's fees. Dkt. No. 77. As there appears to be no issues remaining for resolution, the clerk is directed to close this case.

Dated this 22nd day of October, 2024.

Kymberly K. Evanson
United States District Judge